**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | |
|---|---|
| **Javon Marqus Stephenson,** ) | |
| **Plaintiff,** ) | |
| ) | **1:14cv319 (TSE/TCB)** |
| **v.** ) | |
| ) | |
| **C. Rojas, et al.,** ) | |
| **Defendants.** ) | |

<u>MEMORANDUM OPINION</u>

On March 27, 2014, Javon Marqus Stephenson, a Virginia inmate proceeding <u>pro se</u>,

filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his First and

Fourteenth Amendment rights, as well as rights under the Contract Clause, U.S. Constitution

Article I, § 10. Plaintiff's allegations arise out of his refusal to sign a refusal of treatment/hold

harmless agreement at the time of refusing his prescribed medications, and resulting disciplinary

infractions. <u>See</u> Compl. Att., "Facts" ¶¶ 1-43. By Order dated April 28, 2014, plaintiff's

Contract Clause and First Amendment claims were dismissed with prejudice, pursuant to 28

U.S.C. § 1915A(b)(1), for failure to state a claim. Therefore, plaintiff's Due Process claim is the

sole remaining claim in this action. Plaintiff was also directed to particularize and amend his

Due Process claim, to sign and complete a Consent Form, and to sign and complete an

exhaustion affidavit. Dkt. 4. In response, plaintiff filed a Motion for Reconsideration, pursuant

to Federal Rule of Civil Procedure 59(e), which the Court construes as filed pursuant to Rule

60(b).[1] This motion must be granted in part and denied in part. Also pending before the Court is

plaintiff's Motion for Appointment of Counsel, which must be denied, without prejudice.

---

[1] Rule 59(e) states that "a motion to alter or amend a judgment must be filed no later than 28
days after the entry of the judgment." As the Court's initial order did not render a judgment,
Rule 59(e) is inapposite to plaintiff's case. In deference to his <u>pro se</u> status, however, plaintiff's

## I.

Reconsideration under Rule 60(b) is available for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered
evidence that, with reasonable diligence, could not have been discovered in time
to move for a new trial under Rule 59(b); (3) fraud ..., misrepresentation, or
misconduct by an opposing party; (4) the judgment is void; (5) the judgment has
been satisfied, released or discharged; it is based on an earlier judgment that has
been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

Plaintiff argues that the Court erred in its April 28, 2014 Order by (1) wrongfully

concluding that he did not have standing under the Contract Clause to challenge the "arbitrary

implementation" of a Virginia Beach Correctional Center ("VBCC") policy; (2) dismissing his

First Amendment claim; (3) misinterpreting his Fourteenth Amendment claim; and (4) declining

to address his request to exercise supplemental jurisdiction over his state law tort claims.

Plaintiff's motion must be denied on claims (1), (2), and (3).  Plaintiff's motion will be granted

for the limited purpose of addressing plaintiff's fourth allegation.  After considering this issue,

plaintiff's state-law tort claim must be denied.

## II.

In its April 28, 2014 Order, the Court held that plaintiff had failed to state a claim under

the Contract Clause because plaintiff was challenging the implementation of a Virginia

Department of Corrections ("VDOC") policy, rather than a state legislative act.  The Contract

Clause, Article I, § 10, provides "No State shall . . . pass any . . . Law impairing the Obligation of

Contracts."  The Contract Clause prohibits state legislatures from passing any law that

retroactively impairs the obligations of pre-existing contractual rights.  Allied Structural Steel

---

motion will be construed under Rule 60(b), which allows the Court to relieve a party "from a
final judgment, order, or proceeding . . . ."

2

Co. v. Spannaus, 438 U.S. 234, 243 (9178). To state a claim under the Contract Clause properly, a plaintiff must allege that a state legislative act retroactively impaired an existing contractual relationship.

In response, plaintiff argues that the policies he challenges come from the VBCC, not the VDOC. He also argues that the VBCC, as a government entity, can be held liable under the logic of Monell v. Dep't of Social Services of New York, 436 U.S. 658 (1978). The Court concedes that it incorrectly stated that plaintiff's challenges arose out of a VDOC, rather than a VBCC policy. This mistake was irrelevant to the ultimate decision to dismiss plaintiff's Contract Clause claim, however. Assuming without deciding that Monell applies to the Contract Clause, the VBCC is not liable under Monell. As plaintiff correctly points out, a governmental entity can only be sued in a § 1983 action if the entity "implements or executes [an unconstitutional] policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers." Monell, 436 U.S. at 690. As the challenged policy does not actually impede any of plaintiff's constitutional rights, the VBCC cannot be held liable under Monell.

As stated above, a plaintiff only states a claim under the Contract Clause if he alleges that a state law impairs an existing contractual relationship. Determining whether a state law violates the Contract Clause requires a three-step inquiry: (1) determining whether a contractual relationship exists; (2) determining whether a change in state law impairs that relationship; and (3) determining whether the impairment in that relationship is "substantial." General Motors Corp. v. Romein, 503 U.S. 181, 186 (1992). Plaintiff cannot meet the first prong of the test. Plaintiff has no contractual relationship with the VBCC. A contract is a consensual agreement between two parties to submit to an agreed-upon course of dealing. See, e.g., Irving Trust Co. v.

3

Day, 314 U.S. 556, 560-61 (1942) (describing mutuality of agreement and consideration as necessary elements of a contract). Plaintiff, as a state inmate, is, in his own words, a "ward of the state," Compl. Att., "Facts" ¶ 11, and has therefore not entered into any kind of voluntary agreement with the VBCC. Thus, the VBCC policy requiring him to sign a form before refusing medication does not infringe on his contractual rights.

On April 28, 2014, plaintiff's First Amendment claim, holding that he had no constitutional right to use the prison grievance process, was also dismissed. Plaintiff argues that this dismissal was erroneous, stating that "because [he] was overtly retaliated against for exercising his constitutional right in deciding whether to sign a hold harmless agreement indemnifying the State and its officials," the First Amendment claim is adequately alleged. Mot. for Reconsid., at Unnumbered Page 6.

This is incorrect; these allegations, taken as true, still do not state a claim for retaliation in violation of the First Amendment. An inmate's First Amendment rights are not absolute. Prison regulations can restrict free speech, if such a restriction is "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 87 (1987). Therefore, even if plaintiff had a First Amendment right to refuse his medication, the First Amendment does not prohibit prison officials from imposing reasonable restrictions on this right. Officials do not violate the First Amendment by requiring plaintiff to sign a release of liability form, nor for disciplining him for his failure to follow such a policy.

Because plaintiff had no First Amendment right to disobey institutional policies, he has failed to state a claim for retaliation. In order to establish a claim for retaliation, a plaintiff must make a threshold showing that the allegedly "retaliatory act violated some constitutional right of an inmate or constituted punishment for the exercise of a constitutional right." Cochran v.

Morris, 73 F.3d 1310, 1318 (4th Cir. 1996). The inmate must allege facts demonstrating that

exercise of some constitutional right was a substantial factor motivating the retaliation. See

Wagner v. Wheeler, 13 F.3d 86, 90-91 (4th Cir. 1993). Plaintiff has not alleged that he was

disciplined for anything other than the failure to follow an institutional order. Therefore, he has

not alleged a valid claim for retaliation.

## III.

Plaintiff also asks the Court to exercise its supplemental jurisdiction over his state-law

claim of tortious interference with contractual rights. This request was not addressed in the April

28, 2014 Order. In the interest of clarity, plaintiff's Motion for Reconsideration must be granted

for the limited purpose of deciding plaintiff's state-law tort claim.

Under Virginia law, the elements of tortious interference with contractual rights are: (1)

the existence of a valid contractual relationship or business expectancy; (2) knowledge of the

relationship by the individual interfering with contractual rights; (3) intentional interference with

a contractual or business relationship; and (4) damage as a result of the interference. See Chaves

v. Johnson, 230 Va. 112, 120, 335 S.E. 2d 97, 102 (1985). Plaintiff has not shown a prima facie

case of tortious interference with his contractual rights. As stated above, he has no contractual

relationship with the VBCC. Therefore, he has not stated a cause of action for tortious

interference with contractual rights. This claim therefore must be dismissed, pursuant to 28

U.S.C. § 1915A(b)(1).[2]

---

[2] Section 1915A provides:

> (a) **Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) **Grounds for dismissal.**—On review, the court shall identify cognizable

## IV.

Lastly, Plaintiff argues that the Court misconstrued his Due Process claim as a procedural claim, rather than a substantive claim for the right to avoid unwanted medical treatment. See Mot. for Reconsid., at Unnumbered Page 7 (As plaintiff's Due Process claim is the only remaining claim in this action, and plaintiff is permitted to particularize and amend his allegations, plaintiff may include his substantive Due Process allegations in his amended complaint. The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. Although their constitutional protections are limited by the "exigencies of the institutional environment," inmates are entitled to basic due process protections. See Wolff v. McDonnell, 418 U.S. 539, 555-56 (1974). The U.S. Supreme Court has held that an inmate does have a "significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." Washington v. Harper, 494 U.S. 210, 221-22 (1990). However, the Court also held that the state may impose reasonable restrictions on this right, such as medicating an inmate against his will, if such restrictions are necessary to protect the safety and security of the prison environment. See id. at 223-227 (citing Turner, 482 U.S. 78); see also Riggins v. Nevada, 504 U.S. 127, 135 (1992) ("Under Harper, forcing antipsychotic drugs on an convicted prisoner is impermissible absent a finding of overriding justification and a determination of medical appropriateness."). An inmate is entitled

---

claims or dismiss the complaint, or any portion of the complaint, if the complaint—
> (1) is frivolous, malicious, or fails to state a claim upon which
> relief can be granted; or
> (2) seeks monetary relief from a defendant who is immune from such action
> which plaintiff asserts is a federal offense

to certain basic procedural protections before receiving antipsychotic drugs against his will, such as a hearing before medical professionals. Id. at 231-236.

As stated in the April 28, 2014 Order, plaintiff has not stated a procedural Due Process claim. He has also not yet stated a substantive Due Process claim. As an initial matter, plaintiff has not established that he, who takes Paxil "for mild anxiety," Compl. Att. "Facts" ¶ 4, has the same substantive liberty interest as the respondent in Harper. In Harper, the respondent had been treated with antipsychotic drugs for schizophrenia for a period of four years. See Harper, 494 at 213-14 & n.2. Plaintiff has not established that his mental illness renders the same substantive protections as Harper's. Secondly, plaintiff has not established that he is actually being medicated against his will. Plaintiff states that the VBCC has informed him that the he "ha[s] the right to refuse to take his medication whenever he [chooses] to." Compl. Att. "Facts" ¶ 7. Plaintiff takes issue only with the VBCC's decision to discipline him for refusing to sign a refusal of treatment/hold harmless agreement. See, e.g., id. ¶ 1. He has therefore not established that he actually has a substantive, rather than procedural, Due Process, claim. In deference to his pro se status, he is directed to particularize and amend his allegations, and to explain why he believes that officials have violated his right to be free of unwanted medical treatment. In addition, he is directed to explain why he believes that the procedures used to restrict this right violate the Fourteenth Amendment.

Plaintiff is also directed to provide more information about why he believes that specific defendants are liable for violations of his Due Process Rights. In general, a defendant can only be held liable under § 1983 if a plaintiff can show that the defendant "acted personally in the deprivation of the plaintiff's rights." Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) (internal quotations and citations omitted). Plaintiff appears to name Moissett and Luft as

7

defendants because they responded to plaintiff's grievances. See generally Compl. Att. "Defendants." However, responding to an inmate's grievances is generally not sufficient personal conduct to render a defendant liable for constitutional violations. Cf. id. (finding that defendant was not sufficiently personally involved in an allegedly unconstitutional action when he received a letter from plaintiff); see also Alder v. Corr. Med. Servs., 73 F. App'x 839, 841 (6th Cir. 2003) ("The mere denial of a prisoner's grievance states no claim of constitutional dimension."). In deference to his pro se status, plaintiff is instructed to provide additional information supporting the liability of defendants Moissett and Luft. Similarly, plaintiff is instructed to provide facts sufficient to allege that defendants Day, Roso, Bendily, Gibbs, and the four unknown officers played significant personal roles in the alleged violation of his Due Process rights.

Plaintiff also appears to name Capt. Stuzzieri as a defendant for his "ability to create and implement [VBCC] policy." Compl. Att. "Defendants." Similarly, plaintiff appears to name Sheriff Ken Stolle as a defendant due to his role "as the official policymaker at the VBCC." Id. It thus appears that plaintiff is attempting to hold both defendants liable as supervisors. Supervisory officials may be held liable for constitutional injuries inflicted by their subordinates only in certain circumstances, however. See Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (citing Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984)). This liability is not premised on respondeat superior, but upon "recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Id. at 798 (quoting Slakan, 737 F.2d at 372-73). "[L]iability ultimately is determined 'by pinpointing the persons in the decisionmaking chain whose

8

deliberate indifference permitted the constitutional abuses to continue unchecked.'" Id. To

establish supervisory liability under § 1983, a plaintiff must demonstrate:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Id. at 799 (citations omitted).

Plaintiff has not provided any allegations against Stuzzieri or Stolle to justify holding

them liable as supervisors.  In deference to his pro se status, he is directed to particularize and

amend his allegations against the defendants.

Lastly, although plaintiff submitted copies of several grievance forms, it is unclear

whether plaintiff has fully exhausted his administrative remedies.  "No action shall be brought

with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a

prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Woodford v. Ngo, 548 U.S.

81, 92 (2006) (requiring complete exhaustion of correctional facility administrative remedies).

Plaintiff, as a Virginia inmate, is required to exhaust the claims raised in the instant complaint in

accordance with the Virginia Department of Corrections ("VDOC") grievance procedures. In

particular, he must comply with VDOC Department Operating Procedure ("DOP") 866.1, which

provides multiple levels of administrative remedies in the form of inmate grievances.  Per DOP

866.1(V)(B), an inmate must first attempt to resolve any issues informally.  Prison officials must

respond to the inmate's complaint within fifteen days of receiving an informal complaint.  See

DOP 866.1(V)(C).  After seeking informal resolution, an inmate may file a regular grievance to

the warden or superintendent.  The grievance must be filed within thirty days of the underlying

incident or occurrence, except in circumstances beyond an inmate's control, or in a situation involving alleged sexual abuse. See DOP 866.1(VI)(A)(1). Depending on the subject of the grievance, up to two additional levels of review by higher authorities within VDOC may be available following the filing of a regular grievance. See DOP 866.1(VI)(C).

Before this action may proceed, plaintiff will be required to submit additional information concerning his exhaustion of administrative remedies. See Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 680 (4th Cir. 2005) (deeming improper sua sponte dismissal of a claim on exhaustion grounds).

Due to the passage of time and the fact that plaintiff has been transferred to a new institution, plaintiff is also directed to sign and complete a Consent Form, and his institution is directed to submit an Inmate Account Report Form.

## V.

Also pending before the Court is plaintiff's March 18, 2014 Motion for Appointment of Counsel. Plaintiff requests that counsel be appointed due to the fact that he is incarcerated and unable to afford counsel. This motion must be denied.

A court may request an attorney to represent an indigent plaintiff proceeding in forma pauperis. 28 U.S.C. § 1915(e)(1). The Fourth Circuit, however, has limited the appointment of counsel to cases where "exceptional circumstances" exist, such as cases with particularly complex factual and legal issues or with a litigant who is unable to represent himself adequately. Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984). It is unnecessary at this time to appoint counsel for plaintiff, as his arguments that is indigent, is incarcerated, and without formal legal training are not "exceptional circumstances" that would warrant appointment of counsel. To date, plaintiff has ably filed his both his complaint and his Motion for Reconsideration. Thus,

plaintiff's request for the appointment of counsel must be denied, without prejudice to renew at a later stage of the proceedings, if appropriate.

## VI.

For the foregoing reasons, plaintiff's Motion for Reconsideration must be granted in part and denied in part, and he will be allowed another opportunity to comply with the Court's April 28, 2014 Order. His Motion for Appointment of Counsel must be denied. An appropriate Order will issue.

Entered this ___31st___ day of ___December___ 2014.

Alexandria, Virginia

_____/s/_____
T. S. Ellis, III
United States District Judge

11